**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Demetrius Ball

    v.                                    Civil No. 11-cv-404-PB

Strafford County Department
of Corrections, et al.[1]


**REPORT AND RECOMMENDATION**


    Before the court is Demetrius Ball's complaint (doc. no. 1) and attachment to the complaint, filed pursuant to 42 U.S.C. § 1983, alleging that defendants, employees of the Strafford County Department of Corrections ("SCDC"), violated his federal constitutional rights while he was serving a sentence in that facility.[2]  The matter is before the court for preliminary review to determine, among other things, whether the plaintiff has asserted any claim upon which relief might be granted.  See 28

---

[1]In addition to the Strafford County Department of Corrections ("SCDC"), plaintiff names the following SCDC staff as defendants to this action:  Superintendent Warren Dowaliby; Assistant Superintendents Jake Collins and Bruce Pelkie; Sgt. Linda Noseworthy; Officer Grace Weisgarber; and Director of the SCDC Men's Therapeutic Community Program Katelyn J. Carpenter.

[2]It appears that Ball was released from incarceration shortly after this action was filed.  Because the complaint was filed by a prisoner, however, the court screens it pursuant to 28 U.S.C. § 1915A(a).

U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

## Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff commences an action pro se, the magistrate judge conducts a preliminary review.  The magistrate judge may issue a report and recommendation after the initial review, recommending that the complaint be dismissed if the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious.  See LR 4.3(d)(2) (citing 28 U.S.C. § 1915A & Fed. R. Civ. P. 12(b)(1)).  In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

To determine if the complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6).  The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Ocasio-Hernández, 640 F.3d at 12 (citations, internal quotation marks and alterations omitted).  The second part of the test requires the court to treat as true all non-conclusory factual allegations, even if "seemingly incredible," and to consider those allegations along with all reasonable inferences drawn therefrom, construed in plaintiff's favor, in determining if the claim is plausible.  Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

## Background

In 2011, Demetrius Ball was serving a sentence at the SCDC. The sentence included a directive that Ball complete a ninety-day substance abuse treatment program called Therapeutic Community ("TC"), which operates as a residential treatment program within the confines of the SCDC.  Ball alleges that the committed portion of his sentence was to be suspended upon his completion of TC.

Ball filed the Therapeutic Community Handbook (hereinafter "TC Handbook") with his complaint which sets forth the rules for TC members.  The TC Handbook states that participants in TC, whether they are sentenced to the program or are participating voluntarily are subject to removal from TC in the event that they fail to follow all SCDC regulations and any additional rules that apply to TC participants.  TC Handbook, Doc. No. 1-1, at 7.  The TC Handbook also states that TC participants can be removed from TC for receiving a facility disciplinary write-up, two TC write-ups, or "with [less] than 2 program write ups or without any prior write-ups on an individual case basis, should the need arise."[3]  Id. at 10.

Ball began TC on approximately April 20, 2011.  Ball states that upon his admission to TC, he noticed that a group of TC inmates were manipulating program rules to have people removed from the program based on race.  Ball states he reported this situation to TC staff and was told to "deal with it."

Ball alleges that he was improperly terminated from TC after forty days for alleged violations of TC rules, causing him to serve his full sentence.  Ball states that he therefore had

---

[3]The court has added in brackets the word "less" to the rule, as that is the only reading of the rule that makes sense in context.

to serve approximately four months more than he would have
served if he had been released from jail after ninety days in
TC.[4]  According to paperwork filed with the complaint, on May 11,
2011, Ball was cited by TC staff for rule violations of
dishonesty and "negative contracting,"[5] for an incident that
concerned removing items from a counselor's office without
permission.  It is not clear what role Ball played in the
incident, but Ball was allowed to remain in TC at that time.

On May 30, 2011, Ball and two other inmates left a group
meeting before it was completed, without permission, to go to
recreation.  The TC Handbook includes the following prohibitions
with respect to leaving group meetings:

- participants "are not allowed to leave the process
  group under any circumstance unless [he or she] must
  use the restroom";

- participants may not "[l]eav[e] a scheduled group or
  activity without permission"; and

---

[4]Although Ball complains of the extension of his sentence,
he seeks monetary damages for time he alleges he improperly
served in jail, not released from incarceration.  Accordingly,
his action arises under § 1983.

[5]"Negative contracting" is defined in the TC Handbook as
agreeing with others to violate a program or facility rule,
either actively or by failing to report an infraction by another
TC participant.  See TC Handbook, Doc. No. 1-1 at 8.

- participants may not "[r]efus[e] to participate in any assigned groups, activities, work assignments, etc."

See id. at 8, 9.  Ball highlights for the court a rule in the TC Handbook requiring a participant who is on the recreation list, as Ball claims to have been on May 30, 2011, to go to recreation.  See id. at 12.

All three inmates who left the group on May 30 were removed from TC.  A document authored by SCDC Assistant Superintendent Jake Collins, explaining the reasons Ball was removed from TC, states that shortly after Ball's removal, Collins and "counselor Kate" (whom the court presumes to be defendant Katelyn Carpenter) met with Ball and advised him that he would need to improve both his behavior and attitude before he could be reconsidered for admission to TC.  Ball does not state what those behaviors were or whether he took any action to address them.

Ball states that the basis for his removal from TC was manufactured, and that after he objected to his removal from TC, Carpenter told him that she didn't want him in the program "anyway," and talked to him about his attitude.  Ball asserts that Carpenter's statements were based entirely on "prejudice and bias."

7

Ball filed administrative grievances concerning his removal from TC.  Ball alleges that SCDC Assistant Superintendent Bruce Pelkie ignored one or more grievances Ball filed, and destroyed documentation "imperative to loss of [Ball's] freedom and liberty," thereby supporting the allegedly manufactured accusations that caused Ball's removal from TC.  Ball also alleges that Officer Grace Weisgarber caused a grievance not to be heard by ordering an officer not to make a copy of an unspecified grievance, losing Ball's grievance, and possibly destroying unspecified evidence.

On June 15, 2011, Ball filed a grievance stating that he had not received responses to other grievances he had filed. Collins responded to Ball in writing the following day stating, "TC is a voluntary treatment program, you are expected to follow the program rules, if you do not, you may be removed."  Collins reiterated that Ball has been told what he needed to do to be considered for readmission to TC.  On June 27, 2011, Ball sent an Inmate Request Form ("IRF") to Collins indicating a desire to meet with Collins so that Ball "could explain and provide clarification."  Ball indicated in that IRF that he did not intend to discuss going back to TC but wanted to talk to Collins about "some other avenue" of reform.

On July 5, 2011, Ball sent an IRF to SCDC Superintendent Warren Dowaliby, complaining that he was not given a hearing prior to his termination from TC, that he was accused of wrongdoing on paper and terminated before the accusations were discussed with Ball.  The following day, Dowaliby responded that Ball had been told what he needed to do to be readmitted to TC, and that, "If [Ball] did not address the problems so [he] could be reconsidered then the matter is closed."

Ball sent another IRF to Dowaliby the next day, July 6, 2011, stating that the discussion with Collins and counselor Kate was inadequate to constitute a formal grievance hearing to which Ball claimed to be entitled under SCDC rules.  Dowaliby responded on July 7, 2011, stating that he would not answer more questions on the subject, as it was his understanding that Ball had involved both the County Administrator and Ball's attorney in the matter.

On July 7, 2011, Ball sent an IRF to Sgt. Linda Noseworthy and Officer Baggs in the SCDC Classifications Department, requesting a "good time hearing."  On July 10, 2011, Noseworthy responded, "Request denied.  You are court ordered to do TC. You need to do it or you will max your sentence out.  The

[Superintendent] will not sign off on any return of good time
per your TC order."

## Discussion[6]

I.   42 U.S.C. § 1983

A government official may be held personally liable under
42 U.S.C. § 1983 if, acting under color of state law, the
official caused the deprivation of a federal constitutional or
statutory right.  Section 1983 states, in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress
> . . . .

Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 40-41
(1st Cir. 2009) ("Section 1983 requires three elements for
liability: deprivation of a right, a causal connection between
the actor and the deprivation, and state action.").  Ball
alleges that the named defendants, while acting under color of

---

[6]The claims, as identified herein, will be considered to be
the claims raised in the complaint for all purposes.  If Ball
disagrees with this identification of the claims, he must do so
by properly objecting to this report and recommendation or
moving to amend his complaint.

state law, have violated his constitutional rights.

Accordingly, his claims arise under § 1983.

II.  <u>Due Process Claims</u>

Ball alleges that his due process rights were violated when
he was removed from TC, denied the suspension of his sentence
and early release on good time without a hearing, and when he
was denied a hearing on, or response to, his administrative
grievances.  Although Ball asserts that his due process rights
arise out of the Sixth Amendment to the United States
Constitution, they in fact arise under the Fourteenth
Amendment's Due Process Clause.  <u>See</u> U.S. Const. amend XIV ("nor
shall any State deprive any person of life, liberty, or
property, without due process of law").  Procedural due process
requirements apply only where a liberty or property interest is
at stake.  <u>See</u> <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569 (1972).
The court addresses each of Ball's claimed liberty interests
below.

A.   <u>Rehabilitative Programming</u>

Ball asserts a liberty interest in participating in the TC
program based on a right to rehabilitation.  Inmates have no
liberty interest, however, in access to rehabilitative

programming during their incarceration.  See Moore v. Weeden,
C.A. No. 09-434 S, 2010 WL 737655, *4 (D.R.I. Mar. 1, 2010)
(citing Washington v. Borejon, 324 F. App'x 741, 741 (10th Cir.
2009), and Fiallo v. de Batista, 666 F.2d 729, 730-32 (1st Cir.
1981)).  As Ball had no right to participate in TC, he cannot
assert a due process violation for his removal from the program.

Even if Ball could assert a right to participate in TC, the
facts alleged in the complaint demonstrate that Ball was
admitted to TC, and was only removed from the program after TC
staff members found that Ball had violated program rules.  The
TC staff has the authority and discretion to remove people from
TC for violating program rules.  See TC Handbook, Doc. 1-1 at
10.  Nothing in the TC Handbook creates any right to participate
in the program, or any right to a hearing prior to removal from
the program.  Further, Ball was advised that he could be
considered for readmission to the program upon making certain
changes to his behavior and attitude.  The record indicates that
Ball did not seek to make those changes or be reconsidered for
the program.

B.   Suspended Sentence

Ball asserts a liberty interest in receiving the suspension
of a portion of his sentence that the court conditioned on

Ball's completion of TC.  There is no liberty interest, however, in being released early from a properly imposed criminal sentence under either federal or New Hampshire law.  See Swarthout v. Cooke, 131 S. Ct. 859, 862 (2011) ("There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." (citing Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979))); Ainsworth v. Stanley, 317 F.3d 1, 5 (1st Cir. 2002) (inmates have no right to parole under federal or New Hampshire law).  In the parole context, an inmate who is not granted parole because he has failed to complete a treatment program, and must therefore serve the full period of incarceration to which he was sentenced, has not suffered the deprivation of any constitutionally protected liberty interest. See Ainsworth, 317 F.3d at 5.

Here, Ball was sentenced to a term of committed incarceration, and was given the opportunity to be released before the maximum term of his sentence, if he completed TC. Accordingly, Ball's situation is analogous to that of an inmate who has the opportunity to seek parole release, but who is denied parole for failing to complete a treatment program.

Because, like an inmate seeking parole, Ball had no liberty interest in serving less than his maximum sentence, he was not entitled to due process before being made to serve his full sentence.  Accordingly, the failure to provide Ball with such process did not violate his rights under the Fourteenth Amendment.

     C.   <u>Good Time</u>

New Hampshire prisoners who are serving sentences of twelve months or less are generally incarcerated in county correctional facilities, such as the SCDC.  County jail inmates, with certain exceptions not applicable here, may be granted "good time," in the discretion of the facility superintendent, allowing them to be released after serving two-thirds of the sentence imposed. <u>See</u> N.H. Rev. Stat. Ann. ("RSA") § 651:18, II.

> Any prisoner whose conduct while in the custody of the superintendent of a county correctional facility has been meritorious may be issued a permit and discharged by the superintendent of the county department of corrections when he has served 2/3 of his minimum sentence, provided it shall appear to the superintendent to be a reasonable probability that he will remain at liberty without violating the law and will conduct himself as a good citizen.

<u>Id.</u>; <u>see</u> <u>State v. Edson</u>, 153 N.H. 45, 48, 889 A.2d 420, 424 (2005) ("The provisions for good time . . . <u>subtract</u> time from a house of correction sentence." (emphasis in original)).  The

statute does not, however, entitle an inmate to, or create a liberty interest in, such good time.  Instead, the grant of good time is left to the discretion of the superintendent. Accordingly, Ball cannot assert a due process claim for the denial of good time.

Ball has not alleged any other basis upon which to challenge the superintendent's decision.  The statute gives the superintendent authority to grant good time based on the superintendent's assessment of whether an inmate is likely to maintain good behavior upon his release.  The court finds that here, the superintendent's decision not to grant Ball good time because Ball did not complete a substance abuse treatment program that was part of his sentence was well within the superintendent's discretion and does not give rise to any claim for relief.

D.   Administrative Grievances

Ball alleges that his due process rights were violated when he was denied a hearing on his grievances, when his grievances were not answered, or when his grievance forms were lost or destroyed.  The grievance procedures established by the SCDC allow inmates to file written grievances with prison administrative officials, who are required by those procedures

to respond to the inmate in writing.  See Inmate Manual, Doc. 1-1 at 21.  If an inmate is not satisfied with the written response received from the first official, the inmate may file a grievance with the SCDC Assistant Superintendent, who must also respond in writing.  Id.  If the grievance remains unresolved after that response, the inmate "shall request further administrative remedy . . . and a Grievance Committee will be convened."  Id.  The regulations authorize an inmate to appear before the Grievance Committee.  Id.  ("An inmate may appear before the committee to present his/her case provided s/he does not pose a threat to the safety or the security of the facility.").

The Due Process Clause itself does not confer on an inmate any right to or liberty interest in the pursuit of grievance procedures.  See Leavitt v. Allen, 46 F.3d 1114, 1995 WL 44530 *2 (1st Cir. 1995) (unpublished table decision).  State-created liberty interests are "generally limited to freedom from restraint which, . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal citations omitted).

The language in the regulations at issue here does not
explicitly create any right to appear before the Grievance
Committee.  Instead, it appears to authorize, but not require,
such an appearance.  Accordingly, the regulations do not create
a liberty interest in the opportunity to appear before the
Grievance Committee.

Moreover, the only harm Ball alleges resulted from the
denial of a grievance hearing was that he was unable to obtain a
reversal of the decision to remove him from TC, and he thus had
to serve the full sentence imposed by the court.  Neither
removal from a treatment program for behavioral problems, nor
the loss of an opportunity to shorten his sentence constitute
hardship that is either atypical or significant in relation to
what is to be expected of normal prison life.  Ball alleges no
other hardship resulting from the denial of a hearing.  Ball's
allegation that he was denied a hearing on his grievance
therefore fails to state a claim of a due process violation.

III. <u>Retaliation</u>

Ball claims that TC program staff falsely accused him of
violating TC rules in order to prevent Ball from grieving his
removal from the program, so that he would have to serve his
full sentence.  Ball states that TC program staff harbored

17

prejudice and bias against him, causing them to seek his continued incarceration.

The First Amendment shields prisoners from retaliation in response to their engaging in protected speech.  Ortiz v. Jordan, 131 S. Ct. 884, 893 (2011) (citing Crawford-El v. Britton, 523 U.S. 574, 592 (1998)).  To state a claim for retaliation for the exercise of his First Amendment rights, Ball must allege: (1) the conduct which led to the alleged retaliation was protected by the First Amendment; (2) some adverse action at the hands of the prison officials; and (3) a causal link between the exercise of his First Amendment rights and the adverse action taken.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011), cert. denied, 181 L. Ed. 2d 989 (2012).

Assuming, without deciding, that the first two prongs of Ball's retaliation claim are satisfied, the court turns to the third prong.  Ball alleges that adverse acts were committed upon him because TC staff members were prejudiced and biased against him.  Aside from a conclusory assertion by Ball, no fact in the complaint indicates or implies any connection between Ball's removal from TC and any prejudice or bias held by any defendant. Accordingly, Ball has failed to allege facts sufficient to satisfy the third prong of a retaliation claim.  Accordingly,

Ball has not stated sufficient facts to state a claim that he
was retaliated against in violation of his First Amendment
rights.

IV.   <u>Other Claims</u>

    A.   <u>Eighth Amendment</u>

    Ball generally asserts that his Eighth Amendment right not
to be subjected to cruel and unusual punishment was implicated
because he was not able to have a portion of his sentence
suspended.  Being required to serve one's entire sentence does
not constitute cruel and unusual punishment under the Eighth
Amendment.  "[C]ourts have uniformly observed that state imposed
sentences which fall within the prescribed ranges of penalties
for the crimes of conviction do not implicate the cruel and
unusual punishment provision of the Eighth Amendment." <u>Farid v.
Bouey</u>, 554 F. Supp. 2d 301, 323 (N.D.N.Y. 2008); <u>cf.</u> <u>Slakman v.
Buckner</u>, 434 F. App'x 872, 874 (11th Cir. 2011) (denial of
parole is a disappointment rather than a punishment of cruel and
unusual dimension) (citations omitted).  Ball has failed to
assert facts sufficient to support a claim for relief under the
Eighth Amendment.

B.    Ninth Amendment

Ball asserts that one or more of his claims arise under the Ninth Amendment.  The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX.  That amendment creates no substantive rights, and only refers to those rights otherwise conferred by law.  See Martínez–Rivera v. Sánchez Ramos*,* 498 F.3d 3, 9 (1st Cir. 2007) (quoting Vega-Rodriguez v. P.R. Tel. Co.*,* 110 F.3d 174, 182 (1st Cir. 1997)).  Accordingly, Ball's claims do not arise under the Ninth Amendment.

C.    Equal Protection

Ball states that other inmates' racial discrimination and prejudice against him caused him to be falsely accused of rule violations in TC.  Ball further states that he so advised TC staff, but they did nothing.  Ball states that TC staff acted with prejudice and bias against him when they removed him from the program.

The Equal Protection Clause provides that no state shall "deny any person within its jurisdiction equal protection of the law." U.S. Const. Amend. XIV.  This provision requires states to treat similarly situated people in a similar manner.  City of

Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439
(1985).  Generally, to establish an equal protection claim, a
plaintiff must demonstrate that, (1) compared with others
similarly situated, he was selectively treated, and (2) that the
selective treatment was motivated by purposeful discrimination
on some improper basis, such as plaintiff's membership in a
particular race or religion.  See Hernandez v. New York, 500
U.S. 352, 360 (1991).

Ball has not asserted what specific act taken by any inmate
or staff member at the SCDC evinced racial prejudice.  Neither
has Ball asserted any facts that demonstrate that inmates of a
different race were treated differently than Ball, nor any
specific fact tending to show that any treatment Ball received
at the SCDC was based on racial animus or discrimination.  As
Ball's allegations of racial discrimination are unsupported by
specific facts, Ball has failed to state an equal protection
claim upon which relief might be granted.

## Conclusion

For the foregoing reasons, the court recommends that the
complaint (doc. no. 1) be dismissed in its entirety.  Any
objections to this Report and Recommendation must be filed
within fourteen days of receipt of this notice.  See Fed. R.

Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 181 L. Ed. 2d 768 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

March 7, 2012

cc:  Demetrius Ball, pro se

LBM:jba